```
           IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  FAYETTEVILLE DIVISION


TERESA PICHOFF, as Special Administrator
of the Estate of BRUCE PICHOFF, Deceased           PLAINTIFF

         v.            Civil No. 07-5145

QHG OF SPRINGDALE, INC. d/b/a
NORTHWEST HEALTH SYSTEM a/k/a
NORTHWEST MEDICAL CENTER OF WASHINGTON
COUNTY, and TRIAD HOSPITALS INC.                   DEFENDANTS
```

## O R D E R

Now on this 10th day of March, 2008, comes on for consideration **Defendants' Second Motion To Dismiss And To Strike Jury Demand** (document #20), and from said motion, and the response thereto, the Court finds and orders as follows:

1. This is a case arising under the Employee Retirement Income Security Act ("ERISA"). Plaintiff Teresa Pichoff alleges that she is the personal representative of an ERISA plan participant, Bruce Pichoff, Deceased, and asserts a claim for breach of the fiduciary duties set forth at **29 U.S.C. §1104**. Plaintiff prays for declaratory and equitable relief, attorney's fees, and costs.

Defendants move for dismissal pursuant to **F.R.C.P. 12(b)(6)**, contending that Plaintiff fails to state a claim for breach of

fiduciary duty cognizable under the civil enforcement provisions of either **29 U.S.C. §1132(a)(2)** or **§1132(a)(3)**.

2.  It is axiomatic that a complaint should not be dismissed under **F.R.C.P. 12(b)(6)** "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." **Krentz v. Robertson Fire Protection District**, 228 F.3d 897, 905 (8th Cir. 2000). Because the complaint must be viewed in the light most favorable to the plaintiff, "as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.*

3.  The Court need not devote much time to defendants' contention that plaintiff has failed to state a claim under **§1132(a)(2)**. That section authorizes a participant to bring suit for "appropriate relief" under **29 U.S.C. §1109**.

Plaintiff does not seek relief under **§1109**, nor would it be available, given that **§1109** provides remedies to a "plan" rather than to a "participant" or a "beneficiary."

4.  **Section 1132(a)(3)** authorizes a participant to enjoin acts which violate the terms of an ERISA plan, or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." **Section 1104** provides that a plan fiduciary "shall

discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries. . . ." It is under these sections that Plaintiff seeks relief.

5.  Defendants first argue that plaintiff is not entitled to rely upon **§1132(a)(3)**, because, "[d]istilled to its essence, plaintiff's complaint seeks the kind of relief available" under **§1132(a)(1)(B)**. That subsection allows a participant to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Defendants rely on **Varity Corp. v. Howe**, **516 U.S. 489 (1996)**, and quote that case to the effect that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate'." **516 U.S. at 515.**

Defendants fail, however, to quote the lines which follow their selected quotation from **Varity**:

> But that is not the case here. The plaintiffs in this case could not proceed under the *first* subsection [§1132(a)(1)(B)] because they were no longer members of the Massey-Ferguson plan and, therefore, had no "benefits due [them] under the terms of [the] plan." They could not proceed under the *second* subsection [§1132(a)(2)] because that provision, tied to §409 [§1109], does not provide a remedy for individual beneficiaries. They must rely on the *third* subsection [§1132(a)(3)] or they have no remedy at all. We are not aware of any ERISA-related purpose that denial of a remedy would serve. Rather, we believe that granting a remedy is consistent with the literal language of the

statute, the Act's purposes, and pre-existing trust law. **516 U.S. at 515** (internal citations omitted, emphasis in original, legal citations in brackets added).

When one considers the entire passage, it is clear that the thrust of **Varity** was to recognize that **§1132(a)(3)** is -- as described elsewhere in that opinion -- a "catchall" provision that acts as a "safety net, offering appropriate equitable relief for injuries caused by violations that §502 [§1132] does not elsewhere adequately remedy." **516 U.S. at 512** (legal citation in brackets added).

6.   The Court has examined Plaintiff's Second Amended Complaint, and finds that it contains the following allegations:

*   that Plaintiff's decedent, Bruce Pichoff ("Pichoff"), was at one time a participant in a life insurance plan (the "Plan") for which defendant Triad Hospitals, Inc. ("Triad") was the Plan Administrator";

*   that the Plan was underwritten, from January 1, 2002, until on or around December 31, 2004, by Aetna Life Insurance Company ("Aetna");

*   that from January 1, 2002, until January 31, 2005, Pichoff elected (and paid premiums for) life insurance coverage under the Plan in the amount of $1,050,000;

*   that the Plan had a provision (the "Disability Feature"), pursuant to which a permanently and totally disabled

employee would continue to be covered by existing life insurance without further payment of premiums. The Disability Feature would, however, cease upon the participant's return to employment;

* that Pichoff was not given notice of the Disability Feature;

* that on January 31, 2005, Pichoff was terminated from his employment by defendant QHG of Springdale, Inc. d/b/a Northwest Health System a/k/a Northwest Medical Center of Washington County, Arkansas ("NWMC"), a subsidiary of Triad, after a lengthy period of disability-related leave;

* that the termination was made without notice to Pichoff, or to the Plan, or to Aetna;

* that in April, 2005, Pichoff was persuaded to return to his employment at NWMC without notice of the effect such return might have on the Disability Feature of the Plan, and that he was given incorrect information about the Plan by NWMC, specifically that his life insurance would continue "at the same levels and amounts that were in effect prior to his termination";

* that in August, 2005, Pichoff was again required to take a disability-related leave;

* that on February 2, 2006, Pichoff was again terminated by NWMC;

* that upon receiving an information packet related to the second termination in late February, 2006, Pichoff learned that

his life insurance coverage had dropped from $1,050,000 to $15,000 as a result of a lapse in coverage following his initial termination, when no claim had been made under the Disability Feature, and that Aetna had been replaced by Sun Life Assurance Company of Canada ("Sun Life") as Plan underwriter;

* that neither Aetna nor Sun Life recognizes any obligation to pay Plaintiff $1,050,000 in life insurance proceeds on Pichoff's life.

In the Court's view, these allegations set forth a claim that defalcations of the Plan administrator caused Pichoff to be eliminated from coverage under the life insurance policy underwritten by Aetna, and to never become eligible for coverage under the life insurance policy underwritten by Sun Life.

If that view is correct, then Plaintiff cannot show that Pichoff is eligible for benefits <u>under</u> the Plan, and would have no remedy under **§1132(a)(1)(B)**.

As noted in ¶3, *supra*, she has no remedy under **§1132(a)(2)**, because that subsection is tied to **§1109**, which does not provide a remedy for individual participants -- and if she has no remedy under **§1132(a)(3)**, she has no remedy at all. The Court, therefore, concludes that defendants' reliance on **Varity** is misplaced.

7. Defendants next argue that the relief sought by Plaintiff is not "appropriate equitable relief" under **§1132(a)(3)**

-6-

because it is not "equitable relief" at all.  Instead, they say, the relief she seeks is money damages -- which is the classic form of legal relief -- unlike the relief sought and obtained by the **Varity** plaintiffs -- which was reinstatement to a plan after having been misled into leaving it.

The pleadings in this case do not indicate a possibility of reinstatement, since the gravamen of the alleged injury is that Pichoff was misled into giving up insurance coverage that cannot now be reinstated because Aetna no longer underwrites the Plan. Thus, if money damages are not available, it appears that Plaintiff will have no remedy at all.

Although the Court in **Varity** commented that "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy," **516 U.S. at 513**, it appears to have done exactly that, by restricting the scope of equitable remedies allowed under ERISA.

In **Mertens v. Hewitt Associates, 508 U.S. 248 (1993),** the Court took up the issue of whether a nonfiduciary who knowingly participates in the breach of an ERISA fiduciary duty could be held liable for plan losses resulting from the breach. The Court recognized that "at common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust," and that "money damages were available in those

courts against the trustee . . . and against third persons who knowingly participated in the trustee's breach." It declined to continue that tradition, however, reasoning that

> [a]t common law . . . there were many situations - not limited to those involving enforcement of a trust - in which an equity court could "establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority." The term "equitable relief" can assuredly mean . . . whatever relief a court of equity is empowered to provide in the particular case at issue. But . . . "equitable relief" can also refer to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages). As memories of the divided bench, and familiarity with its technical refinements, recede further into the past, the former meaning becomes, perhaps, increasingly unlikely; but it remains a question of interpretation in each case which meaning is intended.
>
> In the context of the present statute, we think there can be no doubt. Since *all* relief available for breach of trust could be obtained from a court of equity, limiting the sort of relief obtainable under §502(a)(3) to "equitable relief" in the sense of "whatever relief a common-law court of equity could provide in such a case" would limit the relief *not at all*. We will not read the statute to render the modifier superfluous.

**508 U.S. at 256-257** (internal citations omitted, italics in original). By this line of reasoning, the Supreme Court arrived at the dubious conclusion that under ERISA, "equitable relief" means only a limited class of equitable relief.

Four Justices dissented in **Mertens**, but the Court in subsequent cases continued this line of reasoning. The dissents have also continued. See, e.g., the dissent of Justice Ginsburg in **Aetna Health Inc. v. Davila**, 542 U.S. 200 (2004):

-8-

> Because the Court has coupled an encompassing interpretation of ERISA's preemptive force with a cramped construction of "equitable relief" allowable under §502(a)(3), a "regulatory vacuum" exists: "[V]irtually all state law remedies are preempted but very few federal substitutes are provided."

**542 U.S. at 222.** In fact, no federal substitute has been provided for the "make whole" relief available in the common law equity tradition.

The Eighth Circuit has, as it must, followed the Supreme Court's restrictive interpretation of equitable relief in ERISA cases. Its decision in **Calhoon v. Trans World Airlines, Inc., 400 F.3d 593 (8th Cir. 2005)** is instructive.

Calhoon lost his COBRA continuation insurance coverage because the ERISA fiduciary failed to send premium coupons to his new address -- resulting in his failure to make the requisite payments to keep the coverage in force. Calhoon sued his former employer, its fiduciary, and the insurance company for restitution of the unpaid medical bills he incurred. He was not allowed this remedy, the court explaining:

> Beneficiaries of ERISA plans may sue for breaches of fiduciary duties under 29 U.S.C. §1132(a)(3), but the remedies they may seek in such an action are limited by the language of the statute to traditionally available equitable remedies. The remedy of restitution may be either legal or equitable, depending on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought.
> Monetary relief in the form of restitution may be considered equitable only if it seek[s] not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession. Constructive trusts and

>  equitable liens are the most common forms of restitution in equity.  Monetary damages that are compensatory in nature are traditionally considered to be legal relief because they focus on the plaintiff's losses and seek to recover in money the value of the harm done to the plaintiff instead of punishing the wrongdoer by taking his ill-gotten gains.
>      In determining whether the nature of the monetary relief sought is equitable or legal, we ask whether the value of the harm done that forms the basis for the damages is measured by the loss to the plaintiff or the gain to the defendant, and whether the money sought is specifically identifiable as belonging in good conscience to the plaintiff and can clearly be traced to particular funds or property in the defendant's possession.

**400 F.3d at 596-97** (internal citations omitted).

In light of the foregoing precedent, this Court is obliged to find that the motion to dismiss must be granted.  This follows because the remedy here sought -- recoupment of the amount of life insurance coverage that was in effect before Pichoff's first medical leave -- is measured by the loss to Plaintiff, rather than the gain to defendants, and the funds being sought are not such as can be clearly traced to funds in defendants' possession.

This unfortunate result leaves the Plaintiff without a remedy in a situation where, if traditional equitable principles applied, she would be able to pursue a claim for equitable compensation. Nevertheless, the Court is constrained to apply the "cramped construction of equitable relief" applied by the Supreme Court and the Eighth Circuit to the facts of this case.

**IT IS THEREFORE ORDERED** that **Defendants' Second Motion To Dismiss And To Strike Jury Demand** (document #20) is **granted**, and

this matter is **dismissed.**

**IT IS SO ORDERED.**

               **/s/ Jimm Larry Hendren**
               **JIMM LARRY HENDREN**
               **UNITED STATES DISTRICT JUDGE**